# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**WILLIAMSPORT REALTY, LLC,**

    Plaintiff,

v.                                           CIVIL ACTION NO.: 3:14-CV-118
                                            (GROH)

**LKQ PENN- MAR, INC. and**
**LKQ CORPORATION,**

    Defendants.

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO COMPEL ARBITRATION

Currently pending before the Court is the Motion to Compel Arbitration [ECF 13] filed by Defendants LKQ Penn-Mar, Inc. and LKQ Corporation (collectively "LKQ"). For the following reasons, the Court **DENIES** this motion.

### I. Background

This case concerns alleged violations of environmental law at an auto salvage yard. The landlord of the property–Plaintiff Williamsport Realty, LLC–seeks to evict the tenant–LKQ–for those violations and obtain other relief under the lease. LKQ counters that it did not violate the lease because the prior tenant, which includes entities related to Williamsport Realty from which LKQ obtained the assets it uses to operate the salvage yard, caused the environmental law violations. Presently, LKQ seeks to compel arbitration of Williamsport Realty's claims based on an arbitration clause in the contract in which LKQ purchased the assets from the other entities and their owners.

In 2013, LKQ Corporation negotiated the purchase by LKQ Penn-Mar of the assets

of Ernie's Recycling, Inc. and Ernie's Auto Enterprises, Inc. Avi Hoffer and Ben Zindler are the shareholders of Ernie's Recycling. Ernie's Recycling owned Ernie's Auto Enterprises and Triple Nickel Trucks, Inc. Ernie's Auto Enterprises operated a salvage yard at 4590 Williamsport Pike, Martinsburg, West Virginia. Williamsport Realty is the property's landlord. Hoffer and Zindler are the sole members of Williamsport Realty.

At the beginning of the negotiations, LKQ stated it would only purchase the assets if LKQ could lease the Williamsport Pike property. The parties agreed that LKQ would contract with Williamsport Realty to lease the property. This agreement was memorialized in a non-binding letter of intent between LKQ and Ernie's Recycling. Among other things, this letter stated that, at the closing of the purchase of the assets, Williamsport Realty and LKQ would enter into a lease for the Williamsport Pike property and that the acquisition was subject to execution of an asset purchase agreement and the lease.

On June 3, 2013, LKQ Penn-Mar entered into an Asset Purchase Agreement ("APA") with Ernie's Recycling, Ernie's Auto Enterprises, Triple Nickel Trucks, Hoffer and Zindler (collectively "the Sellers") with an effective date of June 1, 2013. Under the APA, LKQ Penn-Mar received, with certain exceptions, the assets of Ernie's Auto Enterprises and Triple Nickel Trucks. The APA stated that, at closing, the Sellers would deliver Williamsport Realty's signature on a lease for the Williamsport Pike property and LKQ Penn-Mar would sign the lease.

Several other provisions of the APA are pertinent to this case. In section 4 of the APA, the Sellers made various representations and warranties concerning compliance with environmental laws at the Williamsport Pike property. The APA also contains agreements to indemnify by the sellers and LKQ. Finally, the APA contains the following arbitration

2

clause: "Any claim or controversy with respect to, in connection with or arising out of this Agreement shall be decided by arbitration . . . ."

Also on June 3, 2013, LKQ Penn-Mar and Williamsport Realty executed a lease for the Williamsport Pike property with an effective date of June 1, 2013. The lease does not contain an arbitration provision. Further, in paragraph 20.2 of the lease, LKQ agreed to "comply with all Environmental Laws relating solely to its use of the Premises, and permits issued thereunder."

After the parties executed the APA and lease, environmental issues at the Williamsport Pike property came to light. LKQ contends these problems pre-dated its tenancy, rendering the Sellers in breach of the APA's environmental representations and warranties. LKQ claims that it discovered these issues in April 2014 when its employees noticed a petroleum product seeping out of certain locations on the property and, as a result, engaged an environmental contractor that assessed the property and began remediation. Williamsport Realty maintains LKQ caused the environmental issues based on six notices of violation the West Virginia Department of Environmental Protection ("DEP") issued to LKQ. In short, these notices allege LKQ violated environmental laws and a permit by releasing petroleum products and chemical mixtures on the property and exceeding chemical discharge limitations.

The Sellers, LKQ and Williamsport Realty exchanged correspondence concerning these developments. On May 20, 2014, Williamsport Realty sent LKQ a letter stating it had "noted at least two areas where the management of the premises is not in compliance with environmental laws, as follows: 1. The front concrete pad . . . has an approximate eight foot diameter hole that is three to four feet deep; and 2. Used engines and transmissions are

3

being place in a forty yard container that is not sealed at the bottom." The letter directed LKQ to correct the violations. LKQ responded in a letter dated June 9, 2014. This letter disputed the existence of the hole in the concrete pad and stated that Ernie's Auto Enterprises, not LKQ, had placed used engines and transmissions in the referenced unsealed container. LKQ then averred that, in April 2014, it had noticed petroleum product on the premises and engaged the environmental contractor. On August 13, 2014, Williamsport Realty sent LKQ another letter notifying LKQ of the alleged environmental law violations and directing LKQ to remedy them.

On August 28, 2014, LKQ sent two letters. The first letter, addressed to Ernie's Recycling, notifies the Sellers that LKQ is claiming indemnification under the APA because they breached the representations and warranties concerning compliance with environmental laws at the property. LKQ asserts that, based on its estimated damages due to the environmental issues, it was withholding $602,075 from a promissory note due under the APA. The APA authorized LKQ to set off and withhold any indemnification obligation of the Sellers from the note. The second letter, addressed to Williamsport Realty, asserts that LKQ is remediating the property due to the release of petroleum products and demands indemnification under the lease for its damages.

The Sellers and Williamsport Realty responded to these letters in a joint letter dated August 29, 2014. The letter asserts that LKQ caused the environmental problems and advises that the Sellers disagree with the setoff. It also states that, per the lease, Williamsport Realty demands that LKQ correct the environmental law violations. LKQ responded by letter dated September 5, 2014. This letter states, among other things, that, under the APA, the dispute regarding the set-off "is to be decided by arbitration unless we

4

can reach a mutually acceptable resolution" and LKQ is "willing to try to resolve the environmental issues LKQ and [Williamsport Realty] have raised" before moving forward with arbitration.

On October 1, 2014, Williamsport Realty sent LKQ a letter stating it was terminating LKQ's right to possess the leased premises due to LKQ's alleged violations of environmental laws. The letter directed LKQ to vacate the premises by October 8, 2014. LKQ did not leave the property by that date.

As such, on October 14, 2014, Williamsport Realty sued LKQ in West Virginia state court. Its complaint alleges LKQ breached the lease by violating environmental laws, citing the DEP's notices of violation and LKQ's failure to remediate the environmental issues after Williamsport Realty notified LKQ about them. Then, the complaint seeks several forms of relief under various sections of the lease: possession of the premises, damages for rent due and harm to the premises, and reasonable attorneys' fees and costs.

On November 14, 2014, LKQ removed this case to this Court and, on November 21, 2014, filed the instant motion to compel arbitration. Williamsport Realty responded to the motion to compel. Then, LKQ moved to stay discovery pending resolution of the motion to compel and filed a reply supporting its motion to compel. The Court granted the motion to stay discovery on December 16, 2015.

## II. Discussion

The Federal Arbitration Act ("FAA") applies to "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof." 9 U.S.C. § 2. The FAA reflects "a liberal federal policy favoring

arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). Thus, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." Adkins v. Labor Ready, Inc., 303 F.3d 496, 500 (4th Cir. 2002).

When considering arbitrability, courts apply "the federal substantive law of arbitrability, which governs all arbitration agreements encompassed by the FAA." Muriithi v. Shuttle Exp., Inc., 712 F.3d 173, 179 (4th Cir. 2013) (citation omitted). They also apply ordinary state law principles governing contract formation, "including principles concerning the 'validity, revocability, or enforceability of contracts generally.'" Id. (citations omitted).

LKQ seeks to compel arbitration of Williamsport Realty's claims based on the APA's arbitration clause. To do so, LKQ must establish four elements:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.

Adkins, 303 F.3d at 500-01 (citation and quotation marks omitted).

Williamsport Realty contests the second element. When assessing whether an arbitration agreement covers a dispute, a court "may not deny a party's request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Am. Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 92 (4th Cir. 1996) (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960)).

Here, the arbitration clause covers "[a]ny claim or controversy with respect to, in connection with or arising out of" the APA. The Fourth Circuit has "consistently held that

an arbitration clause encompassing all disputes 'arising out of or relating to' a contract embraces 'every dispute between the parties having a significant relationship to the contract regardless of the label attached to a dispute.'" Wachovia Bank, Nat'l Ass'n v. Schmidt, 445 F.3d 762, 767 (4th Cir. 2006) (quoting Am. Recovery Corp, 96 F.3d at 93). Thus, because the arbitration provision contains "arising out of" language, the pertinent inquiry is whether Williamsport Realty's claims are significantly related to the APA. See id. When addressing this issue, the Court "must determine whether the factual allegations underlying the claim are within the scope of the arbitration clause, regardless of the legal label assigned to the claim." Am. Recovery Corp., 96 F.3d at 93.

The significant relationship test, however, does not apply to this case. Williamsport Realty's complaint seeks relief based only on provisions of the lease. It does not refer to the APA or any conduct outside of the landlord-tenant relationship. This dispute therefore concerns the lease, not the APA. The Fourth Circuit has stated that "[t]he scope of an arbitration clause in one contract can extend to a dispute arising under a second contract, provided that the dispute 'significantly relates' to the first agreement." Gen. Elec. Capital Corp. v. Union Corp Fin. Grp. Inc., 142 F. App'x 150, 152 (4th Cir. 2005). But the Fourth Circuit has only applied this principle when the party to be compelled to arbitrate signed the contract with the arbitration clause. See Gen. Elec. Capital Corp., 142 F. App'x at 152 (compelling arbitration of claims brought under a contract without an arbitration clause because claims had significant relationship to an overarching contract with an arbitration clause when the parties had signed both contracts); Long v. Silver, 248 F.3d 309, 317-19, 321 (4th Cir. 2001) (compelling arbitration of claims of plaintiff who had executed two contracts with arbitration clauses where claims had significant relationship to at least one

contract); Am. Recovery Corp., 96 F.3d at 90, 94 (compelling arbitration of claim brought under contract without an arbitration clause because the claim was significantly related to a contract with an arbitration clause that the parties had executed). That is not true here because Williamsport Realty did not sign the APA. Accordingly, the second element is not satisfied because Williamsport Realty is not a signatory of the arbitration agreement.

LKQ therefore must show another basis for binding Williamsport Realty to arbitrate.[1] LKQ argues there are two other such grounds: the doctrine of equitable estoppel and the intertwined nature of Williamsport Realty's claims and LKQ's dispute with the Sellers.

First considering equitable estoppel, arbitration generally "'is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed' to arbitrate." R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n, 384 F.3d 157, 160 (4th Cir. 2004) (quoting Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 416 (4th Cir.2000)). A party, however, can agree to arbitrate "'by means other than personally signing a contract containing an arbitration clause.'" Id. (quoting Int'l Paper Co., 206 F.3d at 416). In such situations, "'theories arising out of common law principles of contract and agency law' are used to bind nonsignatories to arbitration agreements." Id. (quoting Int'l Paper Co., 206 F.3d at 417).

"The doctrine of equitable estoppel 'precludes a party from asserting rights he otherwise would have had against another when his own conduct renders assertion of those rights contrary to equity.'" Id. (quoting Int'l Paper Co., 206 F.3d at 417-18). In the

---

[1] Even if the significant relationship test applied, LKQ would not satisfy it. The complaint seeks to evict LKQ, obtain damages for rent due and harm to the premises caused by the environmental law violations, and attorneys' fees and costs. It bases this relief on LKQ's actions as a tenant and the lease. Thus, Williamsport Realty's claims relate strictly to the lease. They do not have a significant relationship to the APA.

8

arbitration context, this "doctrine applies when one party attempts to hold [another party] to the terms of [an] agreement while simultaneously trying to avoid the agreement's arbitration clause." Id. at 160-61 (citation and internal quotation marks omitted). The Fourth Circuit has stated that, "just as estoppel can apply against a signatory to an arbitration clause who sues a nonsignatory thereto, it can also apply against a nonsignatory who sues a signatory." Am. Bankers Ins. Grp., Inc. v. Long, 453 F.3d 623, 628 (4th Cir. 2006). A non-signatory is estopped from avoiding arbitration "when it [is seeking or] receives a direct benefit from a contract containing an arbitration clause." R.J. Griffin & Co., 384 F.3d at 161 (quotation marks and citation omitted). This "direct benefit" test "recognizes that a nonsignatory should be estopped from denying that it is bound by an arbitration clause when its claims against the signatory 'arise[] from' the contract containing the arbitration clause." Am. Bankers Ins. Grp., Inc., 453 F.3d at 628 (citing R.J. Griffin & Co., 384 F.3d at 162). As such, courts in the Fourth Circuit apply equitable estoppel against a nonsignatory when the nonsignatory's claims seek to enforce rights contained in the contract with the arbitration provision. See. e.g., Int'l Paper Co., 206 F.3d at 416 (estopping nonsignatory from refusing to arbitrate because its "entire case hinge[d] on its asserted rights under the" contract with the arbitration provision); Kepler Processing Co., LLC v. New Mkt. Land Co., Civil Action No. 5:08CV00040, 2008 WL 4509377, at *6 (S.D.W. Va. Oct. 2, 2008) (applying equitable estoppel because the nonsignatory's claims sought "to enforce rights that are contained in [the] contract to which it is not a party"); Benefits in a Card, LLC v. Talx Corp., Civil Action No.606-CV-03655-GRA, 2007 WL 750638, at *3 (D.S.C. Mar. 7, 2007) (estopping non-signatories from avoiding arbitration because their complaint's multiple references to the contract containing the arbitration provision showed

9

their claims related to the benefits of the contract).

Here, equitable estoppel does not apply because Williamsport Realty is not seeking to enforce rights contained in the APA. Rather, the complaint only seeks to enforce provisions of the lease. LKQ urges that Williamsport Realty has realized a "direct benefit" from the APA because, without the APA, it would not have the lease and Williamsport Realty may have a right to indemnification under the APA for its claims. In short, LKQ seeks to expand the Fourth Circuit's "direct benefit" test to encompass benefits realized by the nonsignatory that extend beyond the nature of the nonsignatory's claims. Other courts, but not the Fourth Circuit, "have held that the 'direct benefit' test also recognizes that a nonsignatory to an arbitration clause may benefit from the contract containing the arbitration clause–and should therefore be estopped from arguing that it is not a party thereto–in ways other than the assertion of claims based on the contract." Am. Bankers Ins. Grp., Inc., 453 F.3d at 628 n.5. The Court declines to extend the "direct benefits" test to such a situation for the first time here. Accordingly, equitable estoppel does not apply.

Finally, LKQ argues that its claims against the Sellers and Williamsport Realty's claims are so intertwined that all of the claims must be arbitrated.

The Fourth Circuit has granted the requests of nonsignatory defendants to arbitrate claims that would not otherwise be arbitrable when those claims were sufficiently intertwined with arbitrable claims against signatory co-defendants. In J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315 (4th Cir. 1988), a plaintiff sued a parent company and its subsidiaries concerning the termination of certain contracts that contained an arbitration provision. The plaintiff and the subsidiaries had signed those contracts. Id. at 318. The claims against the subsidiaries were already referred to arbitration, and the

nonsignatory parent company wanted to arbitrate the dispute as well. Id. at 320. The plaintiff argued this was improper because the parent company had not signed the contracts. Id. The Fourth Circuit allowed the parent company to arbitrate because the claims against the parent and subsidiaries were sufficiently intertwined, explaining that, "[w]hen the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement." Id. at 320-21. In Long v. Silver, the Fourth Circuit extended this principle to allow nonsignatory, defendant shareholders to arbitrate claims that were intertwined with the plaintiff's claims against the signatory corporation that were arbitrable where all of the claims concerned the same contracts. 248 F.3d at 320.

None of the circumstances of J.J. Ryan & Sons and Long are present here. A nonsignatory defendant is not seeking to arbitrate claims with a signatory defendant's arbitrable claims. Instead, LKQ seeks to force a nonsignatory plaintiff to arbitrate claims that are not before this Court and under a different contract. Accordingly, the alleged intertwined relationship between Williamsport Realty's claims and LKQ's possible claims against the Sellers does not justify compelling arbitration. Cf. Holmes v. Chesapeake Appalachia, LLC, Civil Action No. 5:11-cv-123, 2012 WL 3647674, at *12-13 (N.D.W. Va. Aug. 23, 2012) (finding that extraordinary circumstances warranted sending nonsignatory defendants to arbitration *sua sponte* because the claims against them were "inexorably intertwined with and dependent upon the claims brought against the defendants who have moved to compel arbitration"). Having found no basis for compelling arbitration of Williamsport Realty's claims, the Court denies the motion to compel.

### III.  Conclusion

For the foregoing reasons, the Court **DENIES** the Motion to Compel Arbitration.

In light of this ruling, the Court **LIFTS THE STAY** of discovery.  The Court will issue a new First Order and Notice following entry of this Order.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record herein.

**DATED:** May 15, 2015

GINA M. GROH
CHIEF UNITED STATES DISTRICT JUDGE